UNITED STATES of America, ex rel. George FIELDING, Theodore Mentzer, Harold Vickers, Louis Chippas and Rudolph Lutz

v.

John J. DEGNAN, Attorney General of New Jersey, Joseph A. Fecounda, Warden, Mercer County Detention Center, and State of New Jersey, Appellants.

UNITED STATES of America ex rel. Anthony Michael ROMANO

v.

John J. DEGNAN, Attorney General of New Jersey, Joseph A. Fecounda, Warden, Mercer County Jail, Appellants.

UNITED STATES of America, ex rel. Frederick KOENIG and Paul Casavina

v.

John J. DEGNAN, Attorney General of New Jersey, Joseph A. Fecounda, Warden, Mercer County Detention Center, and State of New Jersey, Appellants.

Nos. 78–2000, 78–2001 and 78–2078.

United States Court of Appeals, Third Circuit.

Argued Oct. 18, 1978.

Decided Nov. 28, 1978.

**620**

David S. Lieberman, App. Section, Division of Criminal Justice, State of New Jersey, Princeton, N. J., for appellants.

Lionel A. Kaplan, Joseph D. Kaplan & Son, Trenton, N. J., for appellees, Harold Dean Vickers and Theodore Mentzer.

George J. Koelzer, Evans, Koelzer, Marriott, Osborne & Kreizman, Red Bank, N. J., for appellee, Anthony Michael Romano.

John A. Sweeney, Dietz, Allen & Sweeney, Mount Holly, N. J., for appellee, Paul Casavina.

Sheldon "Skip" Taylor, Miami, Fla., for appellees, Rudolph Lutz and George Fielding.

Before GARTH, BIGGS and MARIS, Circuit Judges.

## OPINION OF THE COURT

MARIS, Circuit Judge.

These are appeals by the respondents in three allied habeas corpus proceedings from orders of the district court granting the petitions of the relators for writs of habeas corpus. The relators are being held by the State of New Jersey in the Mercer County Detention Center on charges of possession, possession with intent to distribute, and conspiracy to possess and distribute marijuana, bail being set at $500,000 as to each of them. All the relators except Casavina face a maximum penalty of 10 years in prison and a fine of $30,000. Casavina faces a maximum prison term of 15 years and a $45,000 fine.

Two of the petitions, one by Fielding, Mentzer, Vickers, Chippas and Lutz jointly, and another by Romano, were filed July 21, 1978. The third, by Koenig and Casavina, was filed July 31, 1978. The district court ordered the respondents to show cause returnable July 25th and August 2d, respectively, why the writs should not be granted and referred the petitions to a United States magistrate for consideration and recommendations. The magistrate, after hearing testimony as to Fielding, Mentzer, Vickers, Chippas, Lutz and Romano filed his report on July 28th holding that fixing uniform bail of $500,000 for each relator was beyond the range within which judgments could rationally differ in relation to the apparent elements of the situation and amounted to legal arbitrariness and discrimination in the administration of the bail right in violation of the federal constitution. The magistrate accordingly concluded that the relators were entitled to habeas relief and directed that each relator for whom a constitutional bail had not been set by the state court in the interim should appear in the district court on August 2, 1978, "at which time the terms of the enlargement of each shall be set."

On August 2d the magistrate held a hearing on the petition of Koenig and Casavina. Finding that Koenig had not exhausted his state remedies he recommended that his petition be dismissed without evidentiary hearing. As to Casavina the magistrate followed his report as to the six other relators and found the $500,000 bail set for him also to be excessive. He accordingly directed that unless a constitutional bail had been set for this relator prior to August 18th, he

should appear in the district court on that date "at which time the terms of his enlargement shall be set."

The district court adopted as its opinions the reports and recommendations of the magistrate, granting on July 31st the petitions of Fielding, Mentzer, Vickers, Chippas, Lutz and Romano for writs of habeas corpus and on August 15th denying the petition of Koenig and granting that of Casavina. Writs of habeas corpus were accordingly issued directed to the warden of the Mercer County Detention Center commanding him to have the bodies of the relators in the district court on August 2d and 18th, respectively. The writs have not been executed, however, in view of a stay granted by this court on August 1st.

We are confronted at the outset with the question whether we have jurisdiction to entertain the appeals, namely, whether the orders of the district court of July 31st and August 15th were final appealable orders. We conclude that they were not and that the appeals must accordingly be dismissed.

The orders of the district court from which these appeals were taken ordered that the petitions for a writ of habeas corpus be granted and further ordered that the report and recommendation of the magistrate be adopted and incorporated as the opinion of the court. They did not, however, direct that the relators be released from their state custody, either forthwith or conditionally, as was done in the order appealed from in *United States ex rel. Thomas v. State of New Jersey*, 472 F.2d 735, 736–737 (3d Cir.), *cert. den.*, 414 U.S. 878, 94 S.Ct. 121, 38 L.Ed.2d 123 (1973).[1] It is true that the report and recommendation of the magistrate found that the bail fixed for the relators by the state court was unconstitutionally excessive and that the relators were entitled to relief through habeas corpus. The report followed with the direction that each relator for whom a constitutional bail had not been set earlier should appear in court on August 2d (August 18th in the case of Casavina) at which time the terms of enlargement of each should be set. The district court did not embody these conclusions and recommendations of the magistrate in its orders, however, but merely adopted them as its opinion.

An opinion of a court is not appealable as such, however,[2] and the findings and conclusions set forth in it are not directly reversible on appeal but only when and as they are incorporated in or support an order, judgment or decree of the court which is under appellate review. Here the only orders of the district court, which are before us on appeal were to adopt the magistrate's reports as the *opinions* of the court and to grant the writs of habeas corpus petitioned for by the relators. We are satisfied that both orders were purely procedural and interlocutory. Writs of habeas corpus were in fact issued and they merely directed that the relators be brought before the court on August 2d (August 18th in the case of Casavina). Because of the stay issued by this court, the writs were not executed and hearings on August 2d and 18th were not held. At the hearings on the return of the writs, when they are ultimately held, the court will doubtless enter orders finally disposing of the proceedings either by discharging the relators from custody forthwith or at a fixed future date if in the meantime the state court has not effected a reduction of their bail to figures which the district court finds to be within constitutional limits, or by remanding them to state

---

1. In the *Thomas* case the order appealed from read:

   "Ordered that a writ of habeas corpus shall issue.

   "Further Ordered that pending appeal, if any is taken by the State, or pending retrial, the Passaic County Court entertain an application by petitioner for bail to be fixed by the State Court in such amount and such form as may be deemed reasonable.

   "Further Ordered that in the event an appeal is not taken by the State and the indictment is not moved for retrial within 60 days of the date hereof, petitioner shall be released from all further custody pursuant to the indictment."  472 F.2d 736–737.

2. *United States v. Collins*, 300 F.2d 821, 822 n. 1 (1st Cir. 1962); *Holdsworth v. United States*, 179 F.2d 933, 934 (1st Cir. 1950); *Wright v. Gibson*, 128 F.2d 865, 866 (9th Cir. 1942).

custody if such a reduction of the bail has been made in the interim between the issuance of the writs and the hearing on their return. Any one of these orders would appear to be a final one terminating the proceedings in which it was entered and as such would be appealable. *See United States ex rel. Thomas v. State of New Jersey,* 472 F.2d 735, 742 (3d Cir.), *cert. denied,* 414 U.S. 878, 94 S.Ct. 121, 38 L.Ed.2d 123 (1973).

Here, however, hearings on the return of the writs of habeas corpus have not yet been held and orders disposing of the relators' custody, either absolutely or conditionally, have not been made by the court. All that has actually been done by the court is to conclude as a result of the hearings on the orders to show cause that the relators have made a showing sufficient to entitle them to release from state custody and to issue writs of habeas corpus to bring them into the custody of the district court so that the court may then make appropriate orders with respect to their state custody, discharging them from it or remanding them to it. It is true that the court has concluded in the magistrate's reports and recommendations which it adopted as its opinions that the relators' state custody was invalid at the time of the show cause hearings and that it might then have ordered the release of the relators from state custody, either absolutely or conditionally, thus rendering unnecessary the formal issuance and service of writs of habeas corpus as appears to have been the procedure followed in the *Thomas* case.

The district court was aware, of course, of the difference between orders to issue writs of habeas corpus to bring the relators into court, purely procedural orders, and orders for the relators' discharge from custody, definitive orders determining and enforcing their right. Here the court deliberately chose the normal and traditional procedure of issuing the writs of habeas corpus first and deferring until the return of the writs the framing and entry of orders, in accordance with its adopted opinions, discharging the relators from state custody if the amount of the state bail has not been reduced in the interim. This may well have been because of the fact that if such a reduction should be made, as is quite possible in view of the conclusion that the present bail is unconstitutionally excessive which was made in the opinions adopted by the district court, the question whether the bail as thus reduced was still unconstitutionally excessive would still have to be adjudicated by the court before any definitive order with respect to the relators' custody could be framed or the terms and conditions, if any, to be incorporated therein could be formulated. It is thus clear to us that final appealable orders in these cases have yet to be made.

The appeals will be dismissed.

GARTH, Circuit Judge, dissenting:

The order which the majority finds to be interlocutory and nonappealable, I would hold to be final. If it is final, as I believe it to be, this court has jurisdiction to hear the state's appeal. Because the majority holds otherwise, I must respectfully dissent.

I.

Essentially I agree with statement of the facts and the procedure as set forth in the majority opinion. I note, however, that the record reveals that Magistrate Devine's Report and Recommendation which determined that the bail set by New Jersey was excessive and which recommended that "Accordingly each petitioner for whom a constitutional bail has not been set earlier shall appear in this Court on Wednesday, August 2, 1978 at 10:00 a. m. at which time the terms of each enlargement will be set" was filed on Friday, July 28, 1978 at 4:35 P.M. On Monday, July 31, 1978 at 2:10 P.M., the district court filed its order which "adopted and incorporated [the Report and Recommendation of the U.S. Magistrate] as [its] opinion" and ordered "that the petitions for a writ of habeas corpus be and the same are granted."[1] Directly following the

---

1. All references in this opinion are to the Magistrate's Report and the district court's orders

with respect to the group of petitioners who filed their petitions on July 21, 1978. This

entry of that order, Magistrate Devine ordered that a writ issue to the Warden of The Mercer County Detention Center to "have the body of [the petitioner(s)] . . . before the United States District Court . . at Trenton, New Jersey on August 2, 1978 . . ." at 10 A.M.

To me, it is apparent that the hearing of August 2, 1978, even if it be deemed a part of Judge Fisher's order [2] (which did no more than order that the petitions for writs be granted), envisaged no more than the setting of the terms of enlargement for each petitioner to assure his presence for *federal proceedings*. Under *Thomas* this is the most that could be accomplished by a federal court which is proscribed from setting state bail. Not only is there no indication in the Magistrate's opinion that a hearing for still another determination of constitutionality was contemplated, but the one-day interval between the issuance of Judge Fisher's order at 2:10 P.M. Monday, July 31, 1978 and the hearing scheduled for 10:00 A.M. on Wednesday, August 2, 1978, virtually precluded effective resort to the State Courts for a reduction in bail, even if that action had been intended.[3]

I conclude that no matter how broadly the district court order may be read, it, in effect, was either an outright release of the petitioners (subject only to establishment of terms of release on August 2, 1978) or it was a release of the petitioners unless by the morning of August 2 constitutional bail had been set. In either event the crucial constitutional determination having been made and the predicate for the release having been established, the order of the district court necessarily constituted a final order "which 'terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined'". *Richerson v. Jones*, 551 F.2d 918, 922 (3d Cir. 1977) (quoting *St. Louis, Iron Mountain and Southern Ry. Co. v. Southern Express Co.*, 108 U.S. 24, 28–29, 27 L.Ed. 638 (1883)).

### II.

In my view, the Majority Opinion has not given effect to the particular posture of this appeal. This is not a case in which there has been no hearing on the constitutional issues raised by the petitioners, or in which there has been no decision on the merits as to the legality of the petitioners' detention. Rather, an order to show cause as to why the petitioners should not be released was

opinion is also intended to apply to petitioner Casavina. Although his petition was filed at a later date, the proceedings with respect to his petition are analytically identical to those pertaining to the other petitioners.

2. I do not concede that Judge Fisher's order of July 31, 1978 which "Ordered that the petitions for a writ of habeas corpus be and the same are granted" should be construed as anything more than a shorthand equivalent to granting the relief requested, i. e., release, subject only to federal enlargement terms. The use of this shorthand terminology is explained in R. Sokol, Federal Habeas Corpus 37 (2d ed. 1969):

> As a sort of shorthand, lawyers and judges frequently use the expression 'granting the writ' as if it were equivalent to granting the relief requested. There is certainly no harm in this as long as everyone knows what everyone else means. Like most forms of shorthand, it has a certain utility.

On its face, the July 31, 1978 order is thus unequivocally final and appealable. But even if, as the majority assumes, that order is to be

read as if it provided for the issuance of the writ *unless* within some specified time New Jersey reduced bail to an amount deemed to be constitutional by the federal court, *see, e. g., Brace v. O'Neill*, 567 F.2d 237 (3d Cir. 1977) (interpreting district court order in light of opinion), such an order is similarly final for purposes of appellate jurisdiction. *United States ex rel. Thomas v. New Jersey*, 472 F.2d 735, 742 (3d Cir.; *cert. denied*, 414 U.S. 878, 94 S.Ct. 121, 38 L.Ed.2d 123 (1973).

3. Obviously, the petitioners could gain nothing by returning to the state court for a further bail proceeding as they had prevailed in having their bail declared unconstitutional. Hence the petitioners would not have sought further state proceedings at this point. By the same token, the State of New Jersey, claiming that the district court had erred, sought an immediate stay and took an immediate appeal to this court, thus evidencing its disinclination to return to the state court during this interval to seek a reduction in bail.

issued by the district court on July 21, 1978. A hearing was held on July 25, 1978 pursuant to that order to show cause. Because the petitions raised only the legal issue of whether the bail set for the petitioners was constitutionally excessive, it was not necessary to produce the petitioners at this hearing. The federal habeas statute, 28 U.S.C. § 2243, states clearly:

> Unless the application for a writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained.

Following the show cause hearing, the Magistrate issued his Report and Recommendation which specifically addressed the merits of the petitioners' constitutional argument, and found that their constitutional rights had been violated. Once this determination was made, the Magistrate had no choice but to recommend relief from the unlawful confinement. As this Court stated in *United States ex rel. Thomas v. New Jersey*, 472 F.2d 735, 742 (3d Cir.), *cert. denied*, 414 U.S. 878, 94 S.Ct. 121, 38 L.Ed.2d 123(1973), "[w]here a state prisoner has obtained from a district court a decision that his state confinement is unlawful, he is entitled to an order that such confinement be ended." Accordingly, the Magistrate's opinion concluded by recommending that

> ". . . each petitioner for whom a constitutional bail has not been set earlier, shall appear in this court on Wednesday, August 2, 1978 at 10:00 A.M. at which time the terms of the enlargement of each will be set.

Report and Recommendation of Magistrate, *United States ex rel. Fielding v. Degnan*, No. 78–1676 at 8 (D.N.J. filed July 28, 1978). Thus, having ruled for the petitioners on their constitutional claim, there was nothing further to be done other than to release the petitioners on such terms as would assure their presence at any further *federal* proceedings. *See* Fed.R.App.Proc. 23(c).

## III.

Because the Majority Opinion has not given effect to the particular nature of this proceeding, I believe that it has misconstrued *Thomas*. Although I agree that at the August 2 proceeding an opportunity would be available to review any new bail set by the state, for several reasons this mere possibility of further review is not, in my view, sufficient to make the district court's order nonappealable.

First, the appeal in this case is taken from the district court's determination that the $500,000 bail set by the state courts is unconstitutional. Review is not sought of any other bail that the state might set, for it is the state's contention that the district court erred and that the petitioners are not constitutionally entitled to a lower bail than that which has already been set. Because this claim has been fully adjudicated on the merits against the state, the district court's order was final under this court's decision in *Richerson v. Jones*, 551 F.2d 918 (3d Cir. 1977).

Second, whenever habeas relief is conditioned on the state's failure to rectify the unlawfulness of its detention within a specified period, there always remains the possibility of review by the district court to determine whether the state has in fact fulfilled this condition. This possibility, however, has until now never been held to bar immediate appeal from a conditional order granting habeas relief. In *Thomas*, for example, immediate appeal was allowed from an order granting habeas relief conditioned on the state's failure to grant a new trial within 60 days. It is possible that the state might have continued to detain the petitioner in that case, claiming that he had been provided a new trial when, in fact, this was not the case. Thus, under the Majority Opinion's reasoning it would be theoretically possible to say that the order in *Thomas* was interlocutory because it was necessary to hold a further hearing at the end of the 60 day period in order to determine whether or not the condition for which the relief had been granted was satisfied. Such, of course, was not the holding in *Thomas*.

Finally, I believe that state courts can be trusted to fulfill the conditions of a federal court's conditional habeas order without

some provision for continuing federal review. *Thomas* can be read as holding that a district court's conditional habeas order is immediately appealable in part because it is not necessary for the district court to schedule a further hearing as to whether or not the state has satisfied the condition. This rests on the assumption that state courts will comply with federal court orders which bind them.

Because I find no substantive difference between the order held to be appealable in *Thomas* and the July 31, 1978 order entered here, I conclude that the order granting the writs of habeas corpus, no matter how broadly construed, is final and hence appealable.

## IV.

Because the majority has held that the order of the district court does not vest us with jurisdiction, it did not address the merits of this appeal as to whether the $500,000 bail set by the state for each petitioner

> "amount[ed] in its effect to legal arbitrariness in the administration of the bail right provided, so as to constitute a violation of due process, or to discriminatoriness in the application of the right as against petitioner, so as to constitute a violation of equal protection."

*Mastrian v. Hedman*, 326 F.2d 708, 711 (8th Cir.) *cert. denied*, 378 U.S. 903, 84 S.Ct. 1128, 11 L.Ed.2d 982 (1964).[4] Under these circumstances, I do not regard it appropriate to address this issue either, although I must confess to considerable distress with the district court's determination that on

the record developed before the state court judge the *Mastrian* standard had been violated.[5]

## V.

For the reasons which I have discussed above, and more particularly because I believe that *Thomas*, which controls this case and which constitutes the law of this Circuit, has been misconstrued and hence improperly applied, I respectfully dissent.

---

**4.** I realize that because the Majority does not reach the merits of this appeal no discussion of the applicability of the eighth amendment to the states is required. Even though the Supreme Court has yet to rule precisely on this issue, it seems to me, in light of current jurisprudence, that the eighth amendment bail provision would be binding upon the states. *See Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); *Schilb v. Kuebil*, 404 U.S. 357, 365, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971); *Pilkinton v. The Circuit Court of Howell County*, 324 F.2d 45 (8th Cir. 1963); *Simon v. Woodson*, 454 F.2d 161, 164–65 (5th Cir. 1972); *United States ex rel. Goodman v. Kehl*, 456 F.2d 863 (2d Cir. 1977).

**5.** An issue on this appeal concerned the propriety of the district court considering affidavits and evidence submitted only to the federal court and which were not available at the state court proceedings or in the state court record. Under the *Mastrian* standard, which both parties have cited, it appears evident that the federal district court is limited to a consideration of only the state record in its appraisal of the constitutionality of state bail. *See Turco v. Warden, Baltimore City Jail*, 444 F.2d 56 (4th Cir. 1971). That record, and that record alone, must reveal legal arbitrariness or discrimination for habeas relief to be granted.